In re the Commitment of Jonathan Bell:

State of Wisconsin, Petitioner-Respondent,

v.

Jonathan Bell, Respondent-Appellant.†

Court of Appeals

*No. 2005AP890. Submitted on briefs December 15, 2005.
—Decided January 18, 2006.*

2006 WI App 30

(Also reported in 710 N.W.2d 525.)

† Petition to review denied 3-15-06.

275

On behalf of the respondent-appellant, the cause was submitted on the brief of *Len Kachinsky* of *Sisson and Kachinsky Law Offices*, Appleton.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Sally L. Wellman*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Snyder, P.J., Brown and Anderson, JJ.

¶ 1. ANDERSON, J. Jonathan Bell appeals from a judgment and an order committing him as a sexually violent person pursuant to Wis. Stat. ch. 980 (2003–04).[1] The first evaluation of Bell for ch. 980 purposes resulted in a finding that he was not a sexually violent person. The district attorneys responded by contacting the Department of Corrections (DOC), expressing their dissatisfaction with this finding and requesting a second evaluation. Bell argues that the district attorneys' actions violated Wis. Stat. § 980.02(1) and his right to due process. We disagree and hold that while the legislature structured ch. 980 so

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

as to remove from political pressure the initial decision of whether a petition for commitment should be filed, ch. 980 permits a district attorney to have some input prior to the making of that threshold decision. We also reject Bell's due process challenge. We affirm.

## *Facts*

¶ 2.  The facts are brief and largely undisputed. In 1996, Bell was convicted of one count of second-degree sexual assault of a child and one count of third-degree sexual assault. Bell's amended sentence included a seven-year prison term.

¶ 3.  In March 2002, Dr. Cynthia Marsh conducted an evaluation of Bell. Marsh is a special-purpose evaluator with the DOC who performs WIS. STAT. ch. 980 evaluations. The parole board had requested an evaluation of Bell to determine whether he was ready to be released on his mandatory release date. Marsh concluded that there was a substantial probability that Bell would reoffend in a sexually violent way.

¶ 4.  In July 2003, as his August release date approached, Marsh conducted another evaluation of Bell. Following this evaluation, Marsh determined that Bell no longer met the criteria for being a sexually violent person.

¶ 5.  After Marsh filed her report with the DOC, she received a telephone call from Washington County Assistant District Attorney Holly Bunch. According to Marsh, Bunch was "upset that [she] had changed [her] opinion." Bunch asked whether there was any way Marsh would change her opinion. Marsh informed her that only new information would allow her to change her opinion. Thereafter, Washington County District Attorney Todd Martens wrote the Secretary of the DOC

277

and asked for a second opinion. Dr. Anna Salter, a licensed psychologist, conducted the second evaluation. Salter concluded that there was a substantial probability that Bell would engage in acts of sexual violence.

¶ 6. The DOC referred the matter to the Department of Justice (DOJ) and requested that it file a WIS. STAT. ch. 980 petition. The DOJ informed the Washington County District Attorney's office that it would not file a ch. 980 petition. At the request of the Washington County District Attorney's office, the Milwaukee County District Attorney's office filed the ch. 980 petition against Bell prior to his release date. The State requested and the court ordered a jury trial.

¶ 7. Bell filed a motion to dismiss. Bell argued that by contacting his evaluator and the DOC and requesting a second opinion, the Washington County District Attorney's office violated WIS. STAT. ch. 980 and his due process rights. The trial court denied the motion. Following trial, a jury determined that Bell was a sexually violent person. The trial court issued a judgment and an order for commitment.

*Standard of Review*

¶ 8. Bell presents questions of statutory and constitutional interpretation and application. We must therefore decide questions of law, which we do independently of the trial court's analysis and conclusions. *See State v. Matke*, 2005 WI App 4, ¶ 4, 278 Wis. 2d 403, 692 N.W.2d 265, *review denied*, 2005 WI 60, 281 Wis. 2d 113, 697 N.W.2d 471 (interpretation and application of a statute and constitution are questions of law).

*Discussion*

¶ 9. On appeal, Bell renews the arguments he made before the trial court. As noted, he complains that

the actions of the Washington County District Attorneys' office violated Wis. Stat. ch. 980 and his right to due process. Bell argues that allowing local district attorneys to have input in an agency's decision on whether to file a ch. 980 petition subverts the legislative intent to insulate the decision to file a petition from political pressures and permits the careful screening process established by the legislature to be rendered meaningless.

¶ 10. Wisconsin Stat. ch. 980 creates an involuntary civil commitment procedure that is intended primarily to provide treatment for sexually violent persons and to protect the public. *State v. Byers*, 2003 WI 86, ¶ 14, 263 Wis. 2d 113, 665 N.W.2d 729. Wisconsin Stat. § 980.02, titled "Sexually violent person petition; contents; filing," provides in part:

> **(1)** A petition alleging that a person is a sexually violent person may be filed by one of the following:
>
> (a) The department of justice at the request of the agency with jurisdiction, as defined in s. 980.015 (1), over the person . . . .
>
> (b) If the department of justice does not file a petition under par. (a), the district attorney for one of the following:
>
> 1. The county in which the person was convicted of a sexually violent offense . . . .
>
> 2. The county in which the person will reside or be placed upon his or her discharge from a sentence, release on parole or extended supervision, or release from imprisonment, from a secured correctional facility . . . .

Thus, pursuant to the statute's express language, the

authority to actually file a ch. 980 petition is limited to the DOJ and the appropriate district attorneys. Further, the DOJ's authority to file a petition is plainly premised upon an initial referral of the matter by the "agency with jurisdiction," which was the DOC in this case.[2] However, the statute does not clearly set the limits on the district attorney's authority in the determination of whether to file a petition in a particular case.

¶ 11.   Our supreme court defined the scope of the district attorney's authority in *Byers*. In *Byers*, two separate evaluators of Byers concluded that he did not meet the criteria for referral under WIS. STAT. ch. 980. *Byers*, 263 Wis. 2d 113, ¶ 2. Thus, the DOC did not request that the DOJ or the district attorney file a ch. 980 petition against Byers. *Byers*, 263 Wis. 2d 113, ¶ 2. Thereafter, the district attorney arranged for an independent evaluation of Byers, which resulted in a finding that Byers met the criteria for a ch. 980 proceeding. *Byers*, 263 Wis. 2d 113, ¶ 3. The district attorney then filed a petition for commitment against Byers prior to his release date. *Id.* Byers moved to dismiss the petition, claiming that the district attorney did not have the authority to file the ch. 980 petition without the DOC requesting that such a petition be filed and the DOJ declining to file the petition. *Byers*, 263 Wis. 2d 113, ¶ 4.

¶ 12.   Our supreme court held that pursuant to WIS. STAT. § 980.02(1), a request from the agency with jurisdiction, in that case the DOC, and a subsequent decision by the DOJ not to file are prerequisites to a

---

[2] "Agency with jurisdiction" means the agency with the authority or duty to release or discharge the person whose potential commitment is under review. *See* WIS. STAT. § 980.015(1).

district attorney's authority to file a WIS. STAT. ch. 980 petition. *Byers*, 263 Wis. 2d 113, ¶ 43. The court explained that the legislature intended to set forth a step-by-step process for determining when a ch. 980 petition can be filed that placed the agency with jurisdiction in the elevated role of gatekeeper. *See Byers*, 263 Wis. 2d 113, ¶ 42.

¶ 13. The court cited several policy reasons that support placing the agency with jurisdiction in a gatekeeper role that limits the district attorney's authority. *Id.*, ¶¶ 38–41. The court observed that the agency with jurisdiction likely has had the most recent contact with the person, the most comprehensive information regarding the person's status under WIS. STAT. ch. 980 and the most significant amount of knowledge in supervising and dealing with sexual offenders in general. *Byers*, 263 Wis. 2d 113, ¶¶ 39–40. The court also noted that a gatekeeper role for the agency with jurisdiction would facilitate the creation of a consistent, centralized and coordinated process for filing ch. 980 petitions. *Byers*, 263 Wis. 2d 113, ¶¶ 40–41. Finally, the court stated that "the use of the independent expertise of the agency with jurisdiction can be a tool for ensuring that the decision to file a [ch.] 980 petition is insulated from local pressures." *Byers*, 263 Wis. 2d 113, ¶ 41.

¶ 14. Thus, *Byers* teaches us that for reasons of sound public policy the legislature vested the agency with jurisdiction with the authority to make the threshold determination of whether a WIS. STAT. ch. 980 petition for commitment should be filed in a particular case. *Byers* tells us that by structuring the filing of ch. 980 petitions as a step-by-step process with the agency as gatekeeper, the legislature intentionally limited the role of the district attorney in order to keep the decision to file a petition free of political taint. However, con-

trary to Bell's arguments, allowing a district attorney to have some input in the threshold decision of whether a ch. 980 petition should be filed does not contravene the legislature's policy determination.

¶ 15.   The threshold decision of whether a petition should be filed remains in the experienced and able hands of the agency with jurisdiction and outside of the political process. A district attorney may contact the agency to seek clarification of the WIS. STAT. ch. 980 evaluator's determination, to correct factual mistakes, to provide new or additional information, or to ask for a second opinion with a different evaluator. However, as the trial court recognized, the agency can independently exercise its judgment and choose to ignore the district attorney's efforts or to decline the district attorney's request for a second evaluation if the agency determines that these efforts and requests are improperly politically motivated. Further, even if the agency accepts an invitation to obtain a second evaluation, the agency can thereafter refer the case to the DOJ for commitment proceedings or it can adhere to its original decision not to request that the DOJ file a petition.

¶ 16.   WISCONSIN STAT. ch. 980, when read in its entirety, supports our conclusion. First, there is nothing in the chapter that expressly prohibits a district attorney from contacting the appropriate agency about a case, expressing its dissatisfaction with an evaluation and requesting a second opinion. Second, the notification provision, WIS. STAT. § 980.015, suggests that the legislature envisioned that the DOJ and the district attorney would have some input in the commitment decision. Section 980.015 requires the agency with jurisdiction to inform the DOJ and the appropriate district attorney of the anticipated release of a potentially sexually violent person as soon as possible, begin-

ning three months prior to the person's release. The notice from the agency with jurisdiction must contain specified information including a person's offense history and documentation regarding any treatment. *Id.* There would be no need for such notification if the legislature intended to prohibit the DOJ and the district attorney from engaging in a discussion with the agency about the status of a potentially sexually violent person.

■

¶ 17.  In this case, the Washington County District Attorney's office did not overstep its authority. The record shows only that after Marsh filed her evaluation of Bell finding that he was not a sexually violent person, the assistant district attorney called her to ask if she would change her opinion and the district attorney wrote a letter to the secretary of the DOC requesting a second opinion. The DOC chose to obtain a second evaluation of Bell, whom Marsh had recently labeled a sexually violent person. On the basis of that second evaluation, the DOC determined that Bell was an appropriate subject for a WIS. STAT. ch. 980 petition and referred the matter to the DOJ. The DOJ then independently decided not to file a petition against Bell. After these two steps in the process were complete, the Milwaukee County District Attorney's office filed the petition against Bell.

¶ 18.  In an effort to show a violation of his due process rights, Bell claims that the assistant district attorney and district attorney tried to "jawbone DOC into securing a second opinion" and that Salter's second opinion came as a result of "politically-motivated bullying." Bell greatly exaggerates the conduct of the Washington County District Attorney's office. There is simply no evidence suggesting that the district attorney's

office forcefully usurped the authority of the DOC and effectively made the commitment decision on its own. Absent such evidence, we refuse to entertain Bell's otherwise unsupported and undeveloped due process challenge.

¶ 19.  In sum, we hold that the conduct of the Washington County District Attorney's office did not violate WIS. STAT. ch. 980 or Bell's due process rights. The prerequisites for the authority of the district attorney's office to file the ch. 980 petition against Bell—the referral from the DOC and the decision by the DOJ not to file—were met. The judgment and commitment order are affirmed.

*By the Court.*—Judgment and order affirmed.